UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROCKY M. SHROYER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:13 CV 1131 |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Rocky M. Shroyer, a *pro se* prisoner, filed a habeas petition under 28 U.S.C. § 2254 challenging a prison disciplinary proceeding. (DE #1.) In WCC #12-06-0151, a hearing officer found Shroyer guilty of forgery, and as a result he lost 20 days of earned-time credits, among other sanctions. (DE #8-3.) The charge was initiated on June 6, 2012, when Program Director John Schrader wrote a conduct report[1] stating as follows:

> On 6/6/12 at approx. 9:30 AM, I, John Schrader—Program Director, reviewed outgoing general correspondence from Rocky Shroyer — #956193. The letter to his mother and forms are already printed and signed by Shroyer as another person named Rick L. Shaw living at the address of his mother. The signature of requestor on the form is forged.

---

[1] Based on the petitioner's assertion that certain documents appeared to have been omitted from the administrative record, the court previously ordered the respondent to conduct a diligent search and submit any additional portions of the record that were not previously submitted. (DE #10.) The respondent timely complied with this request. (DE #11.) The respondent has submitted a revised copy of the conduct report, which contains the signature of the petitioner indicating that he received a copy of it on June 12, 2012. (DE #11-1 at 1.) The respondent also submitted revised documents from petitioner's administrative appeals, which included attachments that were not previously submitted. (DE #11-2 at 1-32.) The petitioner was granted until May 15, 2014, to file a traverse or otherwise respond to the respondent's submission. (DE #10.) That deadline has passed and no traverse or response has been received.

(DE #11-1 at 1.) The correspondence was attached to the conduct report. (DE #8-1 at 2-4.)

On June 12, 2012, Shroyer was formally notified of the charge and given a copy of the conduct report. (DE #8-2; DE #11-1 at 1.) He pled not guilty, declined the assistance of a lay advocate, and waived the 24-hour notice requirement. (DE #8-2.) He did not request any witness statements. (*Id.*) As physical evidence, he requested the correspondence at issue and a copy of a notice of confiscation form. (*Id.*) He stated that he would provide a copy of a note to his mother (which was also attached to the conduct report) and an envelope she had sent him. (*Id.*) On June 19, 2012, a hearing was conducted on the charge. (DE #8-3.) Shroyer made the following statement: "The documents with Rick Shaw's signature were already signed and sent in to me for review and typing." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) His administrative appeals were denied. (DE #8-4 to DE #8-5; DE #11-2 at 1-32.)

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418

U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Shroyer first claims he was denied the right to call Shaw as a witness. (DE #1 at 4.) A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, Shroyer signed the screening notice, which reflects that he did not request any witnesses. (DE #8-2.) He cannot establish a due process violation based on the denial of evidence he did not properly request. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Furthermore, even if he had made a proper request, he has not explained how the hearing officer could compel the presence of someone outside the prison to

3

participate in the hearing. If Shroyer wished to have a statement from Shaw considered at the hearing, there was nothing preventing him from obtaining one. It is apparent he was in regular contact with his mother, who lived with Shaw, and he also claims that Shaw was on his visitor list. (DE #1 at 4.) He was free to ask Shaw for a statement if he wanted one, but the hearing officer was not required to go outside the prison to investigate or create favorable evidence on Shroyer's behalf. *See Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988); *Hester v. McBride*, 966 F. Supp. 765, 773 (N.D. Ind. 1997); *see also Aguilar v. Endicott,* 224 Fed. Appx. 526 (7th Cir. May 11, 2007) (inmate was not denied due process based on exclusion of witnesses, where his proposed witnesses were unavailable because they were no longer employed by the correctional facility).

Shroyer may have envisioned this case proceeding like a criminal trial, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The hearing officer was not required to produce physical evidence to support the charge, follow the formal rules of evidence, or permit Shroyer to confront the evidence against him. *Piggie*, 342 F.3d at 666 (inmate had no right to cross-examine or confront adverse witnesses); *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000) (formal rules of evidence do not apply at prison disciplinary proceeding); *Rasheed-Bey*, 969 F.2d at 361

("disciplinary board's decision is not limited to evidence presented at the hearing"). Shroyer has not demonstrated a violation of his due process rights.[2]

Shroyer next challenges the sufficiency of the evidence. (DE #1 at 6.) In reviewing a disciplinary sanction for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1994). Additionally, circumstantial evidence alone can be sufficient to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence in the record to support the guilty finding. Shroyer was caught mailing documents which contained the signature of

---

[2] For the sake of completeness, the court notes that Shroyer also requested the correspondence itself, but this was already attached to the conduct report. (DE #8-1 at 2-4.) He requested a "Notice of Confiscation" form, but none was prepared in his case. (*Id.* at 5.) Shroyer also claims that he brought an envelops from his mother to the hearing, and a visiting log showing that Shaw visited him at the prison, but the hearing officer refused to consider this evidence. (DE #1 at 5.) There is nothing in the record to support his argument that he presented this evidence to the hearing officer. (*See* DE #8-3.) In any event, Shroyer has not demonstrated that empty envelops or a visitors log would have exculpated him from the forgery charge. *See Jones*, 637 F.3d at 847; *Meeks*, 81 F.3d at 721.

5

someone outside the prison. He did not deny that these documents were in his possession. His defense was that Shaw signed the documents ahead of time and sent them to him for "review and typing." (DE #8-2.) However, the documents at issue were not typed; they were forms that Shroyer completed by hand. (DE #8-1 at 3-4.) The documents were public records requests directed to the clerk of Madison County, seeking criminal records of persons named Jerry Clemons and Shannon Flockhart. (DE #8-1 at 3-4.) In the accompanying note to his mother Shroyer stated, "I have enclosed the request for access to public records for Rick to mail for me. They are all completed and signed. All you have to do is put them in the envelope and mail them ok. . . . Tell Rick I said hello and I appreciate his assistance in this matter." (DE #8-1 at 2.) Thus, the record reflects that Shaw was mailing the forms that Shroyer had completed as a favor to Shroyer, not that Shroyer was reviewing the forms for Shaw.

In any event, it is not the role of this court to reweigh the evidence and make its own determination of guilt or innocence. *See McPherson*, 188 F.3d at 786. To be constitutionally adequate, the evidence need not point to only one logical conclusion. Rather, the question is whether there is some evidence to support the hearing officer's determination. *See Hill*, 472 U.S. at 457. That standard is satisfied here. *See id.* (due process is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some

evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Accordingly, this claim is denied.

Shroyer next claims he was denied the right to an impartial decision-maker. (DE #1 at 8.) In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the events underlying the charge. *Id.*

Shroyer does not argue, nor is there any evidence in the record to show, that the hearing officer was involved in any way in the events underlying the charge. Instead, he asserts that the hearing officer was biased because she spoke with other prison staff about the conduct report before the hearing. There is no evidentiary support for this argument, but regardless, this was not a formal criminal proceeding, and an off-the-record conversation between the hearing officer and other prison staff does not deny an inmate due process. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("If the [disciplinary] board were a court, *ex parte* proceedings would be irregular and would raise constitutional issues . . . But non-record discussions between an agency's decisionmakers and members of the agency's staff are common and proper.").

Shroyer also asserts that the hearing officer was biased because she rejected his proffered defense. However, it was the hearing officer's job to weigh the evidence and assess the relative credibility of the witnesses, and her adverse ruling does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994). This claim is denied.

Shroyer next argues that the hearing officer's written decision was inadequate. (DE #1 at 8.) The written statement requirement is intended to ensure "administrative accountability and meaningful review," but it is "not onerous." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). To satisfy due process, "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* Furthermore, "the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides[.]" *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987).

Here, the hearing officer stated that in reaching her decision she considered staff reports and Shroyer's statement, and concluded that "C/R supports" the charge. (DE #8-3.) While her statement was brief, this case did not involve complex factual or legal issues. Shroyer was caught with documents containing the signature of someone outside the prison, and he did not deny this fact. The sole issue for the hearing officer to decide was whether Shaw had signed the documents ahead of time and sent them to Shroyer for "review and typing," as he claimed. The hearing officer's statement

8

adequately identified the evidence relied on and her reasoning, specifically, that she rejected Shroyer's proffered explanation. "As there is no mystery about [the hearing officer's] reasoning process," her statement was constitutionally adequate. *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987); *see also Culbert*, 834 F.2d at 631 (although written statement merely referred to conduct report as basis of guilty finding, "nothing more is constitutionally required where the only issue presented at the hearing involved an assessment of the relative credibility of the conduct report and the plaintiff's account of the incident"). Therefore, this claim is denied.

Finally, Shroyer asserts that there were errors during the administrative appeal process. (DE #1 at 8.) However, appeal rights are not one of the rights enumerated in *Wolff,* and the court cannot require additional due process protections beyond those specified. *See Wolff*, 418 U.S. at 564-66; *see also Sanchez v. Miller*, 792 F.2d 694, 702 (7th Cir. 1986) (observing that *Wolff* "sets forth specific minimum procedures and expressly leaves the development of additional safeguards to the discretion of the prison authorities"). Accordingly, even if he is correct, his argument would not entitle him to federal habeas relief.

For these reasons, the petition (DE #1) is **DENIED**.

**SO ORDERED.**

Date: May 30, 2014

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT